UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. NILSEN, | Case No. 16-cv-03631-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| MICHAEL S. LUNAS, et al., | Docket No. 11, 17, 22 |
| Defendants. | |

Plaintiff Michael Mr. Nilsen ("Mr. Nilsen") sues California state judges Michael Lunas, Andrew Blum, Arthur Mann, and Stephen Hedstrom (collectively, the "Judges"); Lake County District Attorney Don Anderson and Deputy District Attorney Daniel Flesch (together, the "Prosecutors"); the Lake County Sheriff's Office and Lake County Deputy Sheriff William Djernes (together, "Lake County"); California Highway Patrol ("CHP"), CHP officer Ryan Erickson, and CHP officer C.J. Tuggle; and Sutter Lakeside Hospital and phlebotomist Daniel Hickey. *See* Docket No. 1 ("Complaint") at 1. The Complaint claims these defendants violated his Fourth and Fourteenth Amendment rights, and sues under 42 U.S.C. §§ 1983, 1985, and 1986 ("Section 1983," "Section 1985," "Section 1986"). *Id.* However, Mr. Nilsen indicated in his briefing that he had dropped his claims under Sections 1985 and 1986. *See* Docket No. 24 at 5-6. At oral argument on the instant motions, Mr. Nilsen confirmed these claims were dropped as to all Defendants.

CHP moved to dismiss Mr. Nilsen's claims as to it on August 2, 2016. *See* Docket No. 22 ("CHP Motion"). Mr. Nilsen opposed on August 15. *See* Docket No. 29 ("CHP Opposition"). The Judges moved to dismiss Mr. Nilsen's claims as to them on July 21, 2016. *See* Docket No. 17 ("Judges Motion"). Mr. Nilsen opposed on August 2. *See* Docket No. 26 ("Judges Opposition").

Lake County moved to dismiss Mr. Nilsen's claims as to it on July 19, 2016. *See* Docket No. 11 ("Lake County Motion"). Mr. Nilsen opposed on August 2. *See* Docket No. 24 ("Lake County Opposition"). For the reasons stated herein, the Court **GRANTS** all Motions with prejudice.

# I.   BACKGROUND

A.   Factual Background

On April 10, 2015, Mr. Nilsen was driving home along California Highway 20. ¶ 10.[1] He came upon a sheriff's vehicle driving 10 miles per hour slower than Mr. Nilsen. ¶ 11. He proceeded to turn onto the street on which he lived, and was then pulled over by Deputy Sheriff Djernes for having followed too closely. ¶¶ 12-13. Deputy Djernes detected the odor of alcohol coming from Mr. Nilsen, and called CHP. ¶ 14. Two officers from CHP attempted to investigate whether Mr. Nilsen was driving drunk. ¶ 16. Mr. Nilsen refused to provide any personal information or to take a sobriety test. ¶ 17. The CHP officers arrested Mr. Nilsen for driving under the influence and resisting an officer attempting to discharge the duty of his office. ¶ 18.

The CHP officers took Mr. Nilsen to a hospital, and asked a phlebotomist to draw blood for a blood test. ¶ 20. The phlebotomist did so. ¶ 22. The parties dispute whether Mr. Nilsen agreed to the blood draw.

B.   Procedural Background

Mr. Nilsen was jailed, but later released on bond, and subsequently arraigned. ¶¶ 26-28. The Complaint does not state the crime with which Mr. Nilsen was charged, but presumably it was for driving under the influence and resisting.

Mr. Nilsen represented himself. He contends that the trial court repeatedly ruled against him, even on issues to which the District Attorney did not respond. ¶¶ 29-37, 43-48. Mr. Nilsen filed an interlocutory appeal, and the appellate panel unanimously ruled against him. ¶¶ 38-42. Mr. Nilsen does not state whether he was convicted, or whether the criminal proceeding remains pending.

In this Court, Mr. Nilsen sues the CHP officers for the search and arrest, and CHP for not

---

[1] Unless otherwise noted, "¶" refers to the Complaint.

**United States District Court**
For the Northern District of California

1  training them not to perform unlawful searches and arrests; Deputy Djernes for the stop and

2  search, and the Lake County Sheriff's Office for not training him not to perform unlawful

3  searches; phlebotomist Hickey for the blood draw and Sutter Lakeside Hospital for not training

4  him  not to draw blood without consent; the Prosecutors for filing charges and pursuing

5  prosecution; and the Judges for ruling against him.

## II.   LEGAL STANDARDS

A.   Subject Matter Jurisdiction

CHP and the Judges argue this Court lacks subject matter jurisdiction.

A defendant may move to dismiss based on a lack of subject matter jurisdiction.  Fed. R.

Civ. Proc. 12(b)(1).  Because Mr. Nilsen brought suit, he must provide facts showing this Court

has jurisdiction.  *See Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990)

(citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).  The burden is on

Mr. Nilsen to demonstrate this Court has jurisdiction.  *See Stock West, Inc. v. Confederated Tribes
of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989).

The Court may look beyond the pleadings when analyzing subject matter jurisdiction.  *See*

Fed. R. Civ. P. 12(d) (only 12(b)(6) and 12(c) motions are converted to motions for summary

judgment if matters outside the pleadings are considered).  However, the Court must accept as true

all material allegations in the complaint, and must construe the complaint in Mr. Nilsen's favor.

*See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121 (9th Cir. 2010).

B.   Failure to State a Claim

All Defendants argued Mr. Nilsen failed to state a claim upon which relief may be granted.

In evaluating a motion to dismiss for failure to state a claim, the Court should "accept as

true all factual allegations in the complaint and draw all reasonable inferences in favor of the

nonmoving party."  *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d

938, 945 (9th Cir. 2014).  However, plaintiffs must provide "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly,* 550 U.S. 544, 555 (2007).  The Court is "not bound to accept as true a legal conclusion

couched as a factual allegation."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### III.   CALIFORNIA HIGHWAY PATROL'S MOTION TO DISMISS

The California Highway Patrol ("CHP") moved to dismiss Mr. Nilsen's claims predicated on Section 1983, arguing it is not a "person" as defined under the statute.  CHP Mot. at 4.  In his Opposition, Mr. Nilsen "agree[d] that dismissal is appropriate" as to his claim under Section 1983.  CHP Opp. at 2.  In his Opposition to Lake County's Motion, Mr. Nilsen stated that he had dropped his claims under Sections 1985 and 1986 "from this litigation," *see* Lake County Opposition at 5-6; at oral argument, Mr. Nilsen clarified that these claims were dropped as to all defendants.  Because Mr. Nilsen concedes he has no claim against the CHP under Section 1983, and he has dropped his claims under Sections 1985 and 1986 against the CHP, his suit is dismissed with prejudice as to the CHP.

### IV.   JUDGES' MOTION TO DISMISS

Mr. Nilsen claims the Judges violated his Fourth and Fourteenth Amendment rights.  As to them, he appears to seek only damages.  *See* Compl. at 11; *see also* ¶¶ 53, 55, 62.

The Judges assert this Court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine, the need for *Younger* abstention, and the 11th Amendment to the U.S. Constitution, and that Mr. Nilsen lacks standing.  The Judges also argue that Mr. Nilsen fails to state a claim because each judge enjoys judicial immunity.

A.   Subject Matter Jurisdiction

1.   Neither the *Rooker-Feldman* Doctrine Nor *Younger* Abstention Likely Apply Here

Under the *Rooker-Feldman* doctrine, federal district courts do not have the "authority to review the final determinations of a state court in judicial proceedings," regardless of whether the instant case "involves federal constitutional issues."  *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995).  The doctrine applies where a "state-court loser[] complain[s] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[es] district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  It applies in "limited circumstances," where the federal-court plaintiff

1    "call[s] upon the District Court to overturn an injurious state-court judgment." *Id*. at 291-92.

2          Rather than asking the Court to overturn the state courts' decisions, Mr. Nilsen seeks

3   monetary relief for the alleged constitutional violation that resulted from that decision. *See* ¶¶ 53,

4   55, 62. The parties have cited no case directly on point, but because Mr. Nilsen does not seek to

5   reverse those decisions directly, *Rooker-Feldman* does not apply here. *See Bell v. City of Boise*,

6   709 F.3d 890, 897 (9th Cir. 2013) (Rooker-Feldman did not apply where the plaintiffs "sought

7   relief designed to remedy injuries suffered from a state court judgment, [but] did not . . . seek

8   relief from the state court judgment itself."); *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir.

9   2015) (*Rooker-Feldman* did not apply where a plaintiff sought "to invalidate the DNA testing

10   statute," rather than to overturn the state court's denial of his application for post-conviction DNA

11   testing); *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (instructing district courts to

12   "pay close attention to the *relief* sought by the federal-court plaintiff" because Rooker-Feldman

13   only applies if the plaintiff seeks relief from the judgment of the state court).

14          *Younger* abstention also does not apply. Under this doctrine, a federal court should abstain

15   from deciding a controversy seeking to enjoin a parallel criminal proceeding while that proceeding

16   is ongoing in state court. *See Younger v. Harris*, 401 U.S. 37 (1971); *Sprint Commc'ns, Inc. v.*

17   *Jacobs*, 134 S. Ct. 584, 588 (2013) ("When there is a parallel, pending state criminal proceeding,

18   federal courts must refrain from enjoining the state prosecution."). However, Mr. Nilsen seeks

19   only damages, *see* ¶¶ 53, 55, 62, and it is unclear whether *Younger* requires dismissal where the

20   federal-court plaintiff seeks damages. *See Am. Consumer Pub. Ass'n, Inc. v. Margosian*, 349 F.3d

21   1122, 1127 (9th Cir. 2003) ("The Supreme Court has not decided whether *Younger* applies to

22   claims for money damages."); *accord Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996)

23   ("we have not previously addressed whether the principles underlying our abstention cases would

24   support the remand or dismissal of a common-law action for damages").

25          2.    <u>Mr. Nilsen Has Standing</u>

26          Standing is "a threshold matter" that is necessary to establish subject matter jurisdiction.

27   *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). In order to establish

28   standing, Mr. Nilsen must show (1) an injury in fact; (2) a "causal connection between the injury

and the conduct complained of;" and (3) redressability of the injury. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *See id.* at 561.

Here, the Judges argue that "there is no direct, 'real and immediate' injury that Plaintiff seeks to redress," because he "simply wants this Court to declare . . . that the Judicial Defendants incorrectly denied his motions." Judges Mot. at 7. This argument ignores that Mr. Nilsen seeks damages, not injunctive relief, from the Judges. If the Court were to reject the Judges' immunity arguments (discussed *infra* IV.B), the Judges would face monetary liability. Thus, Mr. Nilsen appears to have standing.

B.    Affirmative Defenses

       1.    This Suit is Barred by the Doctrine of Judicial Immunity

The Judges argue they are immune from suit under the doctrine of judicial immunity. The Court notes that judicial immunity is construed broadly.

In *Mireles v. Waco*, the plaintiff alleged that a district court judge had ordered police officers to "forcibly and with excessive force seize and bring plaintiff into his courtroom" after the federal-court plaintiff failed to appear for morning calendar. 502 U.S. 9, 10 (1991). The Supreme Court held that "judicial immunity is an immunity from suit, not just from" liability. *Id.* at 11. It noted that a judge's actions are immune whenever that judge acts within his or her judicial capacity, if that judge has jurisdiction. *Id.* at 11-12. Because "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge," immunity applied and was not forfeited by acting "in error . . . or . . . in excess of [the judge's] authority." *Id.* at 12, 13.

Other decisions on this issue have similarly focused on the role being performed by the judge at the time of the alleged wrong. In *Grant v. Johnson*, the federal-court plaintiff challenged a state-court judge's appointment of a guardian. 15 F.3d 146, 147 (9th Cir. 1994). The court held that in fulfilling his judicial role, the judge had acted in an adjudicative capacity, and so was entitled to immunity. *Id.* at 148 (not examining whether the state-court judge reached the proper decision, or behaved properly in handling the plaintiff's case). Similarly, in *Olsen v. Idaho State*

United States District Court
For the Northern District of California

*Board of Medicine*, members of the Idaho State Board of Medicine and State Board of Professional Discipline argued they were entitled to judicial and prosecutorial immunity "because they perform[ed] quasi-judicial and quasi-prosecutorial functions."  363 F.3d 916, 923 (9th Cir. 2004).  The Ninth Circuit examined "Idaho's administrative and procedural scheme for the regulation of medical practitioners," and concluded that the defendants "function[ed] in a sufficiently judicial and prosecutorial capacity to entitle them to absolute immunity."  *Id.* at 924-26.  The court looked only at the role defendants were assigned, and did not examine whether they had committed error or a constitutional violation.  *Id.* at 926, 928.

Here, Mr. Nilsen argues the Judges acted in their personal capacity and lacked jurisdiction. Judges Opp. at 5, 6-7.  He claims that the trial judge "ruled 'corruptly'" because he "repeatedly ruled adversely to Mr. Nilsen" even where the district attorney had not opposed Mr. Nilsen's motion or had neglected some issues raised by Mr. Nilsen.  ¶¶ 53, Judges Opp. at 2.

Judicial immunity applies.  Where, as here, the judge performs an adjudicative function, the judge is acting in a judicial capacity and immunity attaches.  Ruling against a party, even repeatedly, does not mean that a judge is acting in his or her personal capacity.  Judicial immunity "applies even when the judge is accused of acting maliciously and corruptly."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).  Mr. Nilsen's accusation of corruption does not strip the Judges of immunity.

Mr. Nilsen appears to believe the Judges lacked jurisdiction because "the time frame within which he could have been legally prosecuted had closed."  ¶ 44 (citing California Penal Code section 853.6 ("Section 853.6")).  But delay in filing the indictment does not deprive a court of jurisdiction over a criminal defendant.  In *People v. Gourley*, the complaint against the appellant was not filed until 132 days after his arrest.  197 Cal. App. 4th Supp. 1, 4 (2011).  The court noted that under Section 853.6(e), the complaint must be filed within 25 days of arrest, but held this code section did "not state a jurisdictional requirement whose application is mandatory in each case."  *Id.* at 4, 10-11; *accord People v. Domagalski*, 214 Cal. App. 3d 1380, 1389 (1989) (rejecting an argument that the court lacked jurisdiction due to delayed filing because "once a defendant is before the court, the court has jurisdiction over the person regardless of the

procedural defects incident to how he got there"); *People v. Gompper*, 160 Cal. App. 3d Supp. 1, 7 (App. Dep't Super Ct. 1984) (holding, where prosecutor failed to strictly comply with section 853.6, that the defect was procedural and not jurisdictional).

A judge may be stripped of immunity "only when he has acted in the '*clear* absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (emphasis added).  Because failure to strictly comply with Section 853.6 does not affect jurisdiction, the Judges did not clearly lack jurisdiction over Mr. Nilsen.  The Judges acted in an official capacity, and thus judicial immunity bars Mr. Nilsen's action for monetary relief.  As noted above, this is the only relief he seeks and so judicial immunity bars his entire action.

2.      The Eleventh Amendment Also Bars Mr. Nilsen's Suit

The Judges also argue that the Court lacks jurisdiction because the Eleventh Amendment bars Mr. Nilsen's suit.  Mot. at 5.  The Supreme Court has explained that

> The Eleventh Amendment, . . . , does not automatically destroy original jurisdiction.  Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. . . .  Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998); *accord Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999) (explaining that the Eleventh Amendment is an affirmative defense because, "[i]f the Eleventh Amendment truly restricts a federal court's subject matter jurisdiction, then a state could not waive that immunity and no court could ignore the defect.").

Mr. Nilsen argues that the Eleventh Amendment applies only "to suits brought against the State by those other than one of her own citizens . . . nothing here precludes a Californian from bringing suit against his own State."  Judges Opp. at 5.  If one were to look only at the terms of the Amendment, Mr. Nilsen's contention would appear correct:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

8

**United States District Court**
For the Northern District of California

U.S. Const. amend. XI.  However, the United States Supreme Court explained in *Hans v. Louisiana*, 134 U.S. 1 (1890), that the Eleventh Amendment bars citizens from suing their own state.

The immunity afforded to states by the Eleventh Amendment extends to state officials. *See Governor of Ga. v. Madrazo*, 26 U.S. 110, 120-21 (1828) (holding that a suit against the governor of Georgia, where he was named in his official capacity for official acts, and where damages would be paid from the public fisc, was truly a suit against the state).  As explained above, the Judges were acting in their official capacity here.  They assert they are state officials under the Eleventh Amendment, *see id*. at 6, and Mr. Nilsen does not contend otherwise.  Courts have held that superior court judges are covered by the Eleventh Amendment.  *See Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (holding a court "is an arm of the state. Thus it is protected from this lawsuit by Eleventh Amendment immunity."); *Kaisaki by Kaisaki v. Super. Ct. of L.A. Cty.*, 581 F. Supp. 753, 754 (C.D. Cal. 1980) ("[t]he Honorable Judge Paul Egly and the Superior Court of the State of California in and for the County of Los Angeles are, respectively, an employee of and a branch of the government of the State of California.").  Because Mr. Nilsen seeks monetary relief, his suit against the Judges in their official capacities is barred by the Eleventh Amendment.

C.     Failure to State a Claim

The Judges also argue that Mr. Nilsen's pleading is so deficient, it fails to state a claim upon which relief may be granted.  Because Mr. Nilsen's claims are barred by both judicial and sovereign immunity, the Court does not analyze this argument.

Because immunity bars this suit, the Court **GRANTS** the Judges' Motion with prejudice.

## V.     LAKE COUNTY'S MOTION TO DISMISS

The Lake County Defendants argue that Mr. Nilsen's claims against the prosecutors are barred by prosecutorial immunity, and that he pled inadequate facts as to the Sheriff's Office and Sheriff's Deputy.  *See* Lake Mot. at 3.

A.     Prosecutorial Immunity Bars Mr. Nilsen's Suit Against the Prosecutors

As to the prosecutors, Mr. Nilsen appears to seek only compensatory damages. *See* ¶ 54; Compl. at 11.  He argues they lacked jurisdiction to prosecute him because they "fail[ed] . . . to file a charging document in conformity with Penal Code § 853.6." Lake Cty. Opp. at 4.  He admits that "but for" this failure, he "would agree that immunity might apply." *Id*.  But as explained *supra* IV.B.1, even assuming the prosecutors did not perfectly comply with Section 853.6, this does not deprive the California courts of jurisdiction.  Any failure to comply with Section 853.6 does not defeat prosecutorial immunity.

Prosecutors enjoy absolute immunity to claims under Section 1983. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  That immunity is driven by several reasons – the need for the prosecutor to act upon his or her best judgment without regard to potential liability, the fact that Section 1983 suits against the prosecutor would require a "virtual retrial of the criminal offense in a new forum," and the ability of a criminal defendant to obtain other relief. *See id*. at 424-28.  A prosecutor is immune under Section 1983 when "initiating a prosecution and in presenting the State's case." *Id*. at 431.

The prosecutor's enjoys absolute immunity only "so long as the official's actions were within the scope of the immunity." *Id*. at 419 n.13.  The question is whether the complained-of actions were taken in an advocacy, administrative, or investigative role. *See id*. at 430-31.  The first step in this analysis takes a "'functional approach . . . which looks to 'the nature of the function performed.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  "Second, the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," and third and "[f]inally, acts undertaken by a prosecutor 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State,' are entitled to the protections of absolute immunity." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).

Here, Mr. Nilsen does not complain of any administrative or investigative acts performed by the prosecutors; his only charge is that they should not have brought proceedings, and should not have pursued proceedings.  ¶ 54.  These actions fall squarely within the scope of the immunity.

United States District Court
For the Northern District of California

They involve "initiating a prosecution and [] presenting the State's case," *Imbler*, 424 U.S. at 431. The "function performed" was thus one of advocacy rather than investigation or administration. The specific acts performed were beginning and pursuing a suit.  The Supreme Court has held that this precise function justifies immunity.  *See id*. at 424-28.  These actions are entitled to absolute immunity.  *See id*.

As with judicial immunity, once the court has determined that prosecutorial immunity applies, the analysis ends.  *See Burns v. Reed*, 500 U.S. 478, 487-91 (1991) (determining that the prosecutor was entitled to immunity because he was acting as an advocate at the time of the alleged wrong).  Because the prosecutors acted as advocates, they have absolute immunity from the claims asserted herein.

The Court **GRANTS** with prejudice Lake County's Motion as to the prosecutors.

B.      Mr. Nilsen Fails to State a Claim Against the Lake County Sheriff's Office and the Deputy Sheriff

In addition to the prosecutors, Mr. Nilsen sued Lake County's Sheriff's Office and Deputy Djernes.  Mr. Nilsen argues that Deputy Djernes conducted an unlawful search, and asks for damages.  ¶ 50.  He also argues that the Lake County Sheriff's Office failed to properly train Deputy Djernes on the law, entitling him to damages, ¶ 65, and asks that the Court grant declaratory and injunctive relief regarding the Sheriff's Office traffic stop practices.

Lake County Defendants move to dismiss Mr. Nilsen's claims under Federal Rule of Civil Procedure 12(b)(6), arguing Deputy Djernes's alleged conduct is not a constitutional violation, and that he has failed to provide sufficient facts to plead a failure to train.  *See* Lake Cty. Mot. at 11-12, 14-16.

1.      Deputy Djernes

Lake County argues that because Deputy Djernes did not arrest Mr. Nilsen, his conduct did not cause the alleged harm.  Lake Cty. Mot. at 11-12.  While Lake County appears to concede that Deputy Djernes searched Mr. Nilsen, it argues he had probable cause to do so.  *Id*. at 12.

Mr. Nilsen contends Deputy Djernes was not allowed to stop him because California

11

**United States District Court**
For the Northern District of California

1  Vehicle Code section 40300.5 and California Government Code section 26613 ("Section 26613")[2]

2  "disallowed . . . the kind of traffic enforcement stop [Deputy Djernes] made on Mr. Nilsen."  Lake

3  Cty. Opp. at 5.  Mr. Nilsen also argues Deputy Djernes was a "but for" cause of the arrest.  *Id.*

4        California Vehicle Code sections 40300 *et seq.*, govern arrests, not stops.  *See* Cal. Veh.

5  Code § 40300 ("The provisions of this chapter shall govern all peace officers in making arrests for

6  violations of this code without a warrant for offenses committed in their presence, but the

7  procedure prescribed herein shall not otherwise be exclusive of any other method prescribed by

8  law for the arrest and prosecution of a person for an offense of like grade.").  As Deputy Djernes

9  did not arrest Mr. Nilsen, this code section does not apply to Deputy Djernes's actions.  Even if it

10  applied to Deputy Djernes's conduct in allegedly causing Mr. Nilsen's subsequent arrest by the

11  CHP, the chapter encompassing section 40300 specifically permits law enforcement officers to

12  arrest drunk drivers.  *See* Cal. Veh. Code § 40300.5 (allowing an officer to arrest a driver without

13  a warrant where has reasonable cause to believe that driver has been driving under the influence if,

14  *inter alia*, the person could injure himself or others, could destroy evidence of the crime, or could

15  escape apprehension without immediate arrest).  Here, Mr. Nilsen states that Deputy Djernes

16  thought he "detected the odor of alcohol emanating from [Mr. Nilsen's] auto."  ¶ 14.  California

17  courts have found "reasonable cause" in similar circumstances.  *See McDonald v. Justice Ct.*, 249

18  Cal. App. 2d 960, 962 (1967) (finding reasonable cause where "[t]he officers detected a strong

19  smell of an unknown alcoholic beverage about the person of petitioner and her vehicle."),

20  *disapproved of on other grounds by People v. Super. Ct.*, 6 Cal. 3d 757 (1972); *Packer v. Sillas*,

21  57 Cal. App. 3d 206, 214 (1976) (finding reasonable cause where the driver's "physical

22  appearance and behavior supplied the evidence of intoxication").  Thus, if Deputy Djernes had

23  arrested Mr. Nilsen, the facts as pled suggest he would have had reasonable cause to do so.

24        Mr. Nilsen asserts Section 26613 prohibits the Sheriff's Office from enforcing the Vehicle

25  _____

26  [2] Lake County asked for judicial notice of these code sections.  Judicial notice is unnecessary as to these statutes.  *See United States v. Dedman*, 527 F.3d 577, 586-88 (6th Cir. 2008) (explaining that

27  judicial notice of a statute is unnecessary, the court may simply consider it); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Judicial notice of legislative facts such as these is unnecessary.") (discussing Presidential Commission reports,

28  military order and a State Department memorandum).

Code on Lake County roads.  Judges Opp. at 3; Lake County Opp. at 5, 6.  Section 26613provides that,

> Notwithstanding the provisions of Section 29601 the board of supervisors in a county having a population in excess of 3,000,000 may authorize the sheriff to enforce the provisions of the Vehicle Code in the unincorporated area of such county but only upon county highways. The expense incurred by the sheriff in the performance of such duties shall be a proper county charge.
>
> The sheriff shall, on or before the fifth day of each month, forward to the Department of the California Highway Patrol copies of all accident reports made to the sheriff's office and all accident reports of accidents investigated by the sheriff's office.

§ 26613.  This code section deals with funding, not the powers of the Sheriff's Office.  It applies "notwithstanding the provisions of [Government Code] Section 29601," which in turn "enumerat[es] . . . expenses constituting county charges."  Cal. Gov't. Code § 29601.  It continues on to discuss "expense[s] incurred by the sheriff" and what constitutes "a proper county charge." § 26613.  Viewed in context, Section 26613 merely provides that when the board of supervisors of a large county gives the sheriff permission to do so, the sheriff may charge the county for enforcing the Vehicle Code upon county highways.  *See id.*  In other situations, this expense remains an expense of the sheriff's office.  *See id.* at § 29601.  In sum, Section 26613 deals with funding; it does not delimit the Sheriff's Office's substantive powers.  It did not prohibit Deputy Djernes from stopping Mr. Nilsen.

In any event, qualified immunity shields Deputy Djernes from liability "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A law enforcement officer is entitled to immunity from liability if "the officer could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).  Even if section 26613 did in fact limit his powers, Deputy Djernes could have "reasonably believed" that he was entitled to make this stop in view of the above statutory analysis.  Thus, Deputy Djernes would be entitled to qualified immunity.

The Court **GRANTS** Lake County's Motion as to Deputy Djernes.  This dismissal is with prejudice.

United States District Court
For the Northern District of California

2.    <u>Lake County Sheriff's Office</u>

Mr. Nilsen alleges that the Lake County Sheriff's Office failed to properly train Deputy Djernes.  ¶ 65.  First, Mr. Nilsen has not established that Deputy Djernes violated the law. Without some underlying infraction, there is nothing to indicate he was improperly trained.

Second, Mr. Nilsen concedes that he is required to identify a policy or practice that caused his alleged constitutional deprivation.  Lake Cty. Opp. at 6.  In *Monell v. Department of Social Services of New York*, the Supreme Court held that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. 658, 691 (1978).  Instead, the complained-of action must be taken "pursuant to official municipal policy."  *Id.*; *accord Ortez v. Wash. Cty.,* 88 F.3d 804, 811 (9th Cir.1996) ("A local government entity cannot be held liable under § 1983 unless the plaintiff alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy.").  That policy must be pled with factual specificity under *Iqbal / Twombly*.  *See Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678.  Here, Mr. Nilsen has failed to identify such a policy.

The County is dismissed with prejudice.

### VI.    <u>CONCLUSION</u>

For the reasons stated above, all Defendants are dismissed with prejudice.

This order disposes of Docket Numbers 11, 17, and 22.

**IT IS SO ORDERED**.

Dated: September 28, 2016

_____
EDWARD M. CHEN
United States District Judge

14