UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DAVID NILSEN,

Plaintiff,

v.

MICHAEL S. LUNAS, et al.,

Defendants.

Case No. 16-cv-03631-EMC

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; ORDER DENYING
PLAINTIFF'S MOTIONS FOR ENTRY
OF DEFAULT; AND ORDER TO SHOW
CAUSE**

Docket Nos. 101, 78, 80

Plaintiff Michael David Nilsen, proceeding pro se, has filed suit against the Sutter

Defendants, asserting a violation of his civil rights as protected by 42 U.S.C. §§ 1983 and 1985.

The gist of Mr. Nilsen's complaint is that he did not consent to a blood draw taken by Daniel

Hickey, a phlebotomist and employee of Sutter Lakeside Hospital. Previously, the Court granted

the Sutter Defendants' motion to stay proceedings because it appeared likely that collateral

estoppel would preclude Mr. Nilsen's claims against the Sutter Defendants. *See* Docket No. 77

(order). The Sutter Defendants now move for summary judgment based on collateral estoppel.

Having considered the parties' briefs and accompanying submissions, the Court finds this

matter suitable for resolution on the papers, without oral argument.[1] The Court **GRANTS** the

---

[1] Mr. Nilsen improperly filed a sur-reply brief in violation of the Civil Local Rules. *See* Civ. L.R. 7-3(d) (providing that, "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," with two exceptions, one of which is an objection to reply evidence). Although Mr. Nilsen attempts to characterize his brief, at least in part, as an objection to reply evidence, the content of the brief demonstrates otherwise. There is only one paragraph in the brief that contains a real objection to evidence. *See* Sur-Reply at 3-4 (arguing that an exhibit submitted by the Sutter Defendants is "false"). Accordingly, the Court could well strike the sur-reply and give it no consideration. In the interest of justice, however, the Court has taken the arguments in the sur-reply into account.

1   Sutter Defendants' motion.

2                    **I.          FACTUAL & PROCEDURAL BACKGROUND**

3          In his complaint, Mr. Nilsen alleges as follows.  On April 10, 2015, at 2:30 a.m., Mr.

4   Nilsen was driving home.  A Lake County Sheriff's Office SUV was traveling ahead of him, at

5   least 10 mph below the speed limit.  *See* Compl. ¶¶ 10-11.  Mr. Nilsen turned into his driveway

6   and shortly thereafter the SUV came up; it had made a U-turn and followed him.  The deputy

7   driving the SUV advised Mr. Nilsen that he had been following the SUV too closely in violation

8   of the California Vehicle Code.  The deputy then called the California Highway Patrol ("CHP")

9   because he thought he smelled alcohol coming from Mr. Nilsen's car.  *See* Compl. ¶¶ 12-14

10  (alleging that CHP was called "to conduct a 'turnover' DUI investigation").

11         According to Mr. Nilsen, two CHP officers arrived to conduct the DUI investigation. Mr.

12  Nilsen refused to take a field sobriety test.  The officers then arrested Mr. Nilsen, charging him

13  with driving under the influence, driving on a suspended license, and resisting peace officers.  *See*

14  Compl. ¶¶ 16-18.  The resisting charge was eventually dropped.  *See* Compl. ¶ 19; *see also* Defs.'

15  RJN, Ex. J (criminal minutes) (reflecting charges).

16         Mr. Nilsen alleges that the CHP officers took him to Sutter, where Mr. Hickey, a

17  phlebotomist, was assigned to draw Mr. Nilsen's blood.  Mr. Nilsen refused to consent to having

18  his blood drawn, absent a warrant.  *See* Compl. ¶¶ 20-21.  According to Mr. Nilsen, "[u]ltimately

19  the blood was drawn, absent either consent or a warrant."  Compl. ¶ 22.  Mr. Nilsen maintains

20  that, although Defendants claim oral consent was given, it was not, and Mr. Nilsen never signed

21  the blood draw consent form used for suspected DUI patients.  *See* Compl. ¶¶ 23-25.

22         As alleged in the complaint, Mr. Nilsen was arraigned on misdemeanor charges in June

23  2015.  *See* Compl. ¶ 27.  Subsequently, Mr. Nilsen filed a motion to suppress evidence related to

24  the blood draw.  *See* Compl., Ex. A (motion to suppress).  In the motion, Mr. Nilsen claimed that

25  he "repeatedly declined" to give consent to the blood draw.  Compl., Ex. A (Mot. at 4).  A hearing

26  on the motion to suppress was held on July 27 and August 3, 2015; during the hearing, Mr. Hickey

27  provided testimony.  *See* Docket No. 70-1 (Pl.'s Ex. 5) (transcript).  On August 17, 2015, the state

28  superior court issued an oral ruling denying the motion to suppress.  *See* RJN, Ex. A (transcript).

1 The court noted, *inter alia*, that the testimony of Mr. Hickey was "instrumental":

2

3 > Mr. Hickey testified to circumstances where Mr. Nilsen initially did
> not consent to the blood draw. On the representation by the officer
> that he would get a warrant for the same, Mr. Nilsen responded, "Go
> ahead and do" – he stuck his arm out in a manner to indicate that
4 > Mr. Hickey could go ahead and there was a comment, something to
> the effect of, "Go ahead. Let's do this." Further, that there was no
5 > holding down, forcing, any resistance being represented by Mr.
> Nilsen and no duress that Mr. Hickey identified.

6

7 > . . . .

8 > With respect to the search and seizures, with respect to the blood
> draw, the exception put forward by the People is consent. It is clear,
9 > as I think argued by both sides, a warrant is required for a blood
> draw unless there's consent under the current state of the law.
10 > Defendant's argument, which the Court has considered, is
> essentially one of credibility. And that is why should the Court
11 > believe that Mr. Nilsen, who was essentially uncooperative from
> almost the moment he was pulled over until the time he was brought
> to the hospital, would decide to become cooperative and consent to
12 > the blood raw when there had been instances of Mr. Nilsen refusing
> requests and lawful orders of law enforcement.

13

14 > I have considered that argument. And based upon the evidence that
> was presented at the hearing, I find still that there was lawful
> consent given. The testimony of the officer, and particularly the
15 > testimony of Mr. Hickey, is credible, consistent, and it reflects,
> irrespective of the course of conduct of Mr. Nilsen up to that point
16 > in time, that Mr. Nilsen gave a knowing and voluntary consent.

17 RJN, Ex. A (Tr. at 5-7).

18 In September 2015, Mr. Nilsen filed a petition with the Appellate Division of the state

19 superior court, challenging the ruling on the motion to suppress. *See* RJN, Ex. A (petition for

20 writ). In the petition, Mr. Nilsen asserted, *inter alia*, that "the blood draw was warrantless and

21 non-consensual." RJN, Ex. A (Pet. at 3). The Appellate Division denied the petition but deemed

22 Mr. Nilsen's filing a notice of appeal. *See* RJN, Ex. B (order, filed on October 2, 2015); *see also*

23 Cal. Pen. Code § 1538.5(j) ("If the property or evidence seized relates solely to a misdemeanor

24 complaint, and the defendant made a motion for the return of property or the suppression of

25 evidence in the superior court prior to trial, both the people and defendant shall have the right to

26 appeal any decision of that court relating to that motion to the appellate division, in accordance

27 with the California Rules of Court provisions governing appeals to the appellate division in

28 criminal cases.").

1    On February 18, 2016, a three-judge panel denied the appeal. *See* Compl., Ex. G

2    (transcript). The panel noted, *inter alia*, as follows:

3    No warrant was obtained to draw the appellant's blood without his
     consent. Appellant contends that he did not consent to the blood
4    draw. But the only evidence presented to the hearing officer
     through sworn testimony was that he did consent. The hearing
5    judge found the appellant consented after the officer stated he would
     get a warrant. The question then becomes whether the officer's
6    reference to getting a warrant renders the consent involuntary.

7    Voluntariness of consent requires examination of all the
     circumstances surrounding the consent. . . . Here, as the hearing
8    judge found, there was no force, no duress, no threats, no promises
     made. There was only one officer present. The appellant clearly
9    knew he had the right to refuse and to require the officer to obtain a
     warrant.
10
     Under these circumstances, we agree with the hearing judge's
11   determine that the consent was voluntary.

12   Compl., Ex. G (Tr. at 6).

13   On March 28, 2016, Mr. Nilsen filed a notice of appeal of the Appellate Division decision

14   on the motion to suppress. *See* RJN, Ex. C (notice of appeal). He also filed, on the same day, an

15   application to certify the case for transfer to the California Court of Appeal. *See* RJN, Ex. D

16   (application). On April 4, 2016, the Appellate Division issued an order, effectively rejecting the

17   notice of appeal. The Appellate Division noted that Mr. Nilsen had already appealed the motion to

18   suppress to the Appellate Division and that the Appellate Division had affirmed the suppression

19   ruling on February 18, 2016. The Appellate Division also noted that a remittitur had already

20   issued on March 24, 2016. *See* RJN, Ex. E (order). Several days later, the Appellate Division

21   denied Mr. Nilsen's application for certification for transfer to the California Court of Appeal. It

22   noted that "[t]he time to certify has elapsed. The decision rendered on February 18, 2016 has now

23   become final. A remittitur was filed on March 24, 2016." RJN, Ex. F (order).

24   Thereafter, the state criminal proceedings against Mr. Nilsen on the misdemeanor charges

25   continued. Approximately two years later, on February 2, 2018, the state superior court ruled on

26   two motions that had been filed by Mr. Nilsen: (1) "a motion to retroactively grant the suppression

27   motion" and (2) a motion to dismiss "for lack of a speedy trial" pursuant to California Penal Code

28   § 1382. RJN, Ex. G (Tr. at 2, 5). The court denied the first motion, noting that,

4

1  [i]n a misdemeanor pursuant to [California Penal Code §] 1538.5,
   only one suppression motion is contemplated at a special hearing
2  prior to trial. Review of the results of that suppression motion is
   exclusively, again, according to the statute, is exclusively vested in
3  the appellate division. Both of those things happened in this case.
   And so I don't think – I don't find any authority for a renewal or a
4  reopening or a second bite, if you will, at a suppression motion
   pretrial.
5

6  RJN, Ex. G (Tr. at 3).

7       However, the state superior court granted the second motion. The court noted, as an initial

8  matter, that "virtually every delay was attributed to the defendant" such that it could be

9  "successfully argued that the one thing . . . that [Mr. Nilsen] most desires to avoid is a speedy

10 trial." RJN, Ex. G (Tr. at 4). Nevertheless, the court stated, California Penal Code § 1382(3)

11 "requires the dismissal of a misdemeanor if the case is not brought to trial within 30 days for a

12 person in custody or 45 days for a person out of custody." RJN, Ex. G (Tr. at 5). Although the

13 record before the court indicated that Mr. Nilsen had consented to a setting outside of the statutory

14 period, or had waived time, California law provides that a consent or waiver by a pro se litigant "is

15 ineffective unless he or she is advised about the time limits under [§] 1382 and about the effect of

16 a dismissal if such waiver or consent is not given." RJN, Ex. G (Tr. at 6). Because there was "no

17 transcript or other independent evidence that [Mr. Nilsen] was actually informed . . . of the

18 provisions or effects of [§] 1382," his "time waiver was not effective," and, because "substantially

19 more than 45 days [had] elapsed without a trial," the court granted Mr. Nilsen's motion to dismiss.

20 RJN, Ex. G (Tr. at 8).

21      Mr. Nilsen does not dispute that the state superior court granted his motion to dismiss but

22 "le[ft] the suppression ruling in place." RJN, Ex. H (email from Mr. Nilsen to defense counsel).

23 A few weeks after the ruling of the state superior court, Mr. Nilsen filed a motion titled "Motion to

24 Vacate a Void Judgment for Lack of Subject Matter and *[I]n Personam* Jurisdiction." *See* RJN,

25 Ex. H (motion, filed on February 20, 2018). The purpose of this motion was to "vacat[e] . . . the

26 adverse ruling [on the] Motion to Suppress." RJN, Ex. H (Mot. at 1). Mr. Nilsen argued, *inter*

27 *alia*, that he "was never actually arraigned, read his rights or made to enter his personal plea"; that

28 "the accusatory pleading was . . . a nullity" because too much time had passed "between the arrest

United States District Court
Northern District of California

1  and the filing of charges"; and that, without a charging instrument, the state superior court lacked

2  jurisdiction. RJN, Ex. H (Mot. at 2-3). It appears that the prosecution did not file a written

3  opposition to the motion. The parties have not provided any evidence as to what decision was

4  rendered on Mr. Nilsen's motion. Thus, as the record stands, the order denying the motion to

5  suppress is undisturbed, even though the criminal action against Mr. Hickey has been dismissed.

6  ## II.  MOTION FOR SUMMARY JUDGMENT

7  In a prior order, the Court granted the Sutter Defendants' motion to stay because it

8  appeared likely that collateral estoppel would apply to preclude Mr. Nilsen's claims. *See* Docket

9  No. 77 (order). As the Court explained,

10
11
12
13
14
15
16
17
> [s]tate law governs the application of collateral estoppel or issue
> preclusion to a state court judgment in a federal civil rights action.
> The criteria for the application of collateral estoppel are: (1) the
> prior conviction must have been for a serious offense so that the
> defendant was motivated to fully litigate the charges; (2) there must
> have been a full and fair trial to prevent convictions of doubtful
> validity from being used; (3) the issue on which the prior conviction
> is offered must of necessity have been decided at the criminal trial;
> and (4) the party against whom collateral estoppel is asserted was a
> party or in privity with a party to the prior trial. *McGowan v. City of
> San Diego*, 208 Cal. App. 3d 890, 256 Cal. Rptr. 537, 539 (1989).
> By substituting the word "proceeding" for the words "conviction"
> and "trial," the appellate court in *McGowan* held the doctrine of
> collateral estoppel may apply in a civil action to issues determined
> in a prior section 1538.5 motion to suppress ruling.

18  *Ayers v. Richmond*, 895 F.2d 1267, 1270-71 (9th Cir. 1990).

19
20
21
22
23
24
25
26
> In *Ayers* itself, the Ninth Circuit, applying the above criteria, agreed
> with the district court that "the state courts' denial of [the federal
> civil rights plaintiff's] section 1538.5 motions to suppress
> collaterally estopped [him] from relitigating in the civil action the
> issue of whether his arrests violated the fourth amendment." *Id.* at
> 1269. With respect to the issue of a full and fair proceeding, the
> court noted that the plaintiff presented his suppression motions to
> the municipal court with the assistance of counsel and that he
> appealed the adverse rulings pre-trial. *See id.* at 1271. The court
> added that there was a final judgment for purposes of collateral
> estoppel because, even though the plaintiff had a statutory right to
> appeal the adverse rulings within thirty days after entry of his guilty
> pleas, he did not do so. *See id.* at 1271-72 (noting that "a ruling on a
> motion to suppress becomes final by a failure to appeal").

27
28
> In *Johnston v. County of Sonoma*, No. C 10-03592 CRB, 2012 U.S.
> Dist. LEXIS 13779, (N.D. Cal. Feb. 6, 2012), Judge Breyer reached
> the same result. There, the civil rights defendants argued that,
> because a state criminal court had rejected the federal civil rights

6

1
2
3
4
5
6

> plaintiff's contention that a law enforcement officer had unlawfully
> detained her, collateral estoppel applied to the plaintiff's federal
> civil rights claim for unlawful seizure and imprisonment. Judge
> Breyer agreed, noting, *inter alia*, that, "[i]n *Schmidlin v. City of Palo
> Alto*, 157 Cal. App. 4th 728, 774-75 (2007), the court stated that the
> denial of a motion to suppress that argued an arrest and detention
> were unlawful, was sufficiently final for collateral estoppel
> purposes." *Id.* at *13. Judge Breyer added that, in his case, the
> plaintiff had chosen not to pursue an immediate appeal of the state
> criminal court's rulings and so "the determination by the state court
> is sufficiently final for collateral estoppel purposes." *Id.* at *15.

7    Docket No. 77 (Order at 5-6).

8         Compared to *Ayers* and *Johnston*, the instant case presents an even stronger case for

9    application of collateral estoppel. The state superior court denied Mr. Nilsen's motion to suppress

10   evidence and, after it did so, Mr. Nilsen actually appealed but was not successful on that appeal

11   before the Appellate Division. The Appellate Division thereafter denied a second attempt by Mr.

12   Nilsen to overturn the suppression ruling, and that decision was followed by another ruling from

13   the state superior court refusing to disturb the suppression decision, although it ultimately granted

14   Mr. Nilsen's motion to dismiss on an independent ground. In short, Mr. Nilsen pursued appeals of

15   the suppression order and lost at each round.

16        In opposing summary judgment herein, Mr. Nilsen essentially argues that collateral

17   estoppel should not apply because the final judgment in his criminal proceeding may be vacated –

18   specifically, with respect to the suppression decision – based on his "Motion to Vacate a Void

19   Judgment for Lack of Subject Matter and *[I]n Personam* Jurisdiction." *See* RJN, Ex. H (motion,

20   filed on February 20, 2018). The problem for Mr. Nilsen is that there is no evidence that the final

21   judgment has actually been vacated as a result of his motion. That the prosecution did not respond

22   to his motion, *see* Sur-Reply at 2, is immaterial. Mr. Nilsen has not offered any evidence of a state

23   court decision accepting the merits of the arguments in his motion. Thus, as the record stands

24   before the Court, there is a final judgment and that judgment, at least on the suppression issue, is

25   not in Mr. Nilsen's favor.[2]

26

27   _____

28   [2] Accordingly, the Court need not entertain any of the arguments made in the Sutter Defendants'
     reply brief – *i.e.*, challenging Mr. Nilsen's claim that the state superior court lacked jurisdiction.
     *See generally* Reply at 5-12.

1      Mr. Nilsen protests that collateral estoppel still should not apply because the state superior

2   court would not have denied his motion to suppress had it known that Mr. Hickey lied during his

3   testimony before that court.  But California law does not allow a judgment to be collaterally

4   attacked on the ground that evidence was falsified or destroyed.  *See Cedars-Sinai Med. Ctr. v.*

5   *Superior Court*, 18 Cal. 4th 1, 10 (1998) (in addressing whether to create a tort remedy for

6   intentional first party spoliation, noting that "a concern for the finality of adjudication . . .

7   underlies [a] line of cases that forbid direct or collateral attack on a judgment on the ground that

8   evidence was falsified, concealed, or suppressed"; "[s]imilarly, under the doctrines of res judicata

9   and collateral estoppel, a judgment may not be collaterally attacked on the ground that evidence

10  was falsified or destroyed"); *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1175 (1983)

11  (stating that "[f]raud by a party will not undermine the conclusiveness of a judgment unless the

12  fraud was extrinsic, i.e., it deprived the opposing party of the opportunity to appear and present his

13  case").

14      *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004), is not to the contrary as it

15  concerns a situation different from that presented herein.  More specifically, in *Awaby*, the

16  plaintiff brought a § 1983 claim for malicious prosecution – *i.e.*, prosecution without probable

17  cause.  The plaintiff had been charged in state court with embezzlement, and the superior court

18  determined that he should be held to answer after a preliminary hearing.  The Ninth Circuit noted

19  that this decision by the state court "to hold a defendant to answer after a preliminary hearing

20  constitutes *prima facie* – but not conclusive – evidence of probable cause," *i.e.*, precisely because

21  only a preliminary hearing was at issue.  *Id.* at 1067.  The plaintiff could rebut the prima facie

22  finding of probable cause for purposes of his § 1983 malicious prosecution claim with evidence

23  "showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated

24  evidence, or other wrongful conduct undertaken in bad faith."  *Id.*  It was in this context that the

25  Ninth Circuit went on to state that,

26          [f]or similar reasons, the doctrine of collateral estoppel does not bar
            [the plaintiff] from asserting that the [county] District Attorney
27          lacked probable cause to prosecute him, notwithstanding the
            Superior Court's decision to hold him to answer. *When an*
28          *individual has a full and fair opportunity to challenge a probable*

8

*cause determination during the course of the prior proceedings*, he may be barred from relitigating the issue in a subsequent § 1983 claim. However, collateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials.

*Id.* at 1068 (emphasis added). The instant case is distinguishable from *Awabdy* because Mr. Nilsen was afforded a full and fair opportunity to argue that the evidence of the blood draw should have been suppressed. The hearings before the state courts (trial and appellate) were not preliminary-type hearings, as in *Awabdy*.[3]

Accordingly, the Court grants the Sutter Defendants' motion for summary judgment based on collateral estoppel.

### III.    MOTIONS FOR ENTRY OF DEFAULT

With the Court now granting the Sutter Defendants' motion for summary judgment, it appears that all claims have been resolved against all Defendants in this case, except for those claims asserted against the two CHP officers (*i.e.*, Ryan Erickson and C.J. Tuggle). Neither CHP officer has made an appearance in the case as of yet.

In October 2016, Mr. Nilsen moved for entry of default against the officers, but, shortly thereafter, the Clerk of Court declined entry of default. *See* Docket Nos. 40, 45 (motion and Clerk's notice). In August and September 2017, Mr. Nilsen moved again for entry of default but the Court deferred ruling on the motions because the state court criminal proceeding was then still

_____

[3] Moreover, Mr. Nilsen fails to present persuasive evidence that Mr. Hickey lied. Mr. Hickey never testified before the state superior court that he had followed hospital policy in Mr. Nilsen's case. Indeed, Mr. Hickey explained, in his discovery responses in this case, that, at the time of the incident involving Mr. Nilsen, he did not know that it was the hospital's policy to have patients sign the consent form prior to the blood draw or that it was the hospital's policy that oral consent was not enough. *See, e.g.*, Pl.'s Ex. 4 (RFA Response Nos. 6, 9). In his sur-reply, Mr. Nilsen protests that, even if Mr. Hickey did not know the hospital's policy "on the night in question, [by the time] the suppression hearing had rolled around, he knew better." Sur-Reply at 4. But, again, as noted above, Mr. Hickey never claimed, during the suppression hearing, that he had followed hospital policy (as he now understood it) with respect to Mr. Nilsen. In fact, during the suppression hearing, Mr. Hickey was never specifically asked the question of whether he had complied with hospital policy in Mr. Nilsen's case.

In any event, whether Mr. Hickey complied or failed to comply with hospital policy is essentially immaterial because whether there was compliance with hospital policy does not dictate whether or not there was a violation of Mr. Nilsen's constitutional rights. Finally, even if Mr. Hickey had lied about compliance with hospital policy, that does not necessarily mean that he lied about oral consent.

United States District Court
Northern District of California

1    pending. *See, e.g.*, Docket No. 81 (Order at 1).

2          Because the state court criminal proceedings have concluded, the Court now turns to Mr.

3    Nilsen's motions for entry of default. Mr. Nilsen claims that service on the CHP officers was

4    properly effected pursuant to California Code of Civil Procedure § 415.20(a). *See* Docket No. 78

5    (Mot. at 1). Section 415.20(a), however, is inapplicable because that statutory provision applies to

6    corporations and the like, as well as public entities, not individuals. Section 415.20(b) does apply

7    to individuals. However, Mr. Nilsen has not established that service was properly effected

8    pursuant to § 415.20(b). Notably, § 415.20(b) allow for substitute service only when "a copy of

9    the summons and complaint cannot with reasonable diligence be personally delivered to the

10   person to be served." Cal. Code Civ. Proc. § 415.20(b). Mr. Nilsen has failed to show there was

11   an attempt to effect personal delivery with reasonable diligence.

12         The Court therefore denies the motions for entry of default.

13                        **IV.      ORDER TO SHOW CAUSE**

14         As the individual CHP officers still have not been served in this case, the Court ordinarily

15   would have the option of dismissing the action against them without prejudice or ordering that

16   service be made on them within a specified time. *See* Fed. R. Civ. P. 4(m) (providing that, "[i]f a

17   defendant is not served within 90 days after the complaint is filed, the court – on motion or on its

18   own after notice to the plaintiff – must dismiss the action without prejudice against that defendant

19   or order that service be made within a specified time"). The instant case, however, presents a

20   special situation in that the Court's collateral estoppel analysis above would appear to be

21   applicable to not only the Sutter Defendants but also to the individual CHP officers. Given this

22   circumstance, the Court hereby orders Mr. Nilsen to show cause as to why his claims against the

23   individual CHP officers should not be dismissed, in particular, based on the Court's collateral

24   estoppel analysis presented herein.

25         **Mr. Nilsen has two weeks from the date of this order to file a response. If no response**

26   **is timely filed, then the Clerk of the Court shall dismiss the claims against the CHP officers**

27   **with prejudice and close the file in the case (as all claims against all defendants will have**

28   **been resolved).**

## V. CONCLUSION

For the foregoing reasons, the Court grants the Sutter Defendants' motion for summary judgment and denies Mr. Nilsen's motions for entry of default.

**A courtesy copy of this order is being mailed to John P. Devine, Office of the Attorney General, who previously represented CHP in this lawsuit.**

This order disposes of Docket No. 101.


**IT IS SO ORDERED**.


Dated: August 2, 2018

EDWARD M. CHEN
United States District Judge